J-S05005-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN HULL, | : | |
| | : | |
| Appellant | : | No. 1629 WDA 2013 |

Appeal from the Judgment of Sentence August 23, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No(s): CC 2012 – 11026
and CP-02-CR-0011026-2012

BEFORE:  DONOHUE, SHOGAN and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                 **FILED FEBRUARY 4, 2015**

John Hull ("Hull") appeals from the judgment of sentence entered on August 23, 2013, by the Court of Common Pleas of Allegheny County, Criminal Division, following his convictions of driving under the influence of alcohol and a controlled substance ("DUI")[1] and failing to drive within a single lane.[2]  For the reasons that follow, we affirm.

The trial court summarized the facts of this case as follows:

> [O]n May 5, 2012[,] at about 2:27 a.m., Officer Potts of the Jefferson Hills Borough Police Department observed a vehicle traveling in the opposite direction at a high rate of speed.  This vehicle, a Buick, went through the curve with the right tires over the fog line approximately three feet, then veering back onto the road.  As Officer Potts

---

[1]  75 Pa.C.S.A. § 3802(a)(1), (b), (d)(1)-(3).

[2]  75 Pa.C.S.A. § 3309(1).

was preparing to turn around so as to follow the Buick, a second vehicle approached at an even higher rate of speed than the Buick. This vehicle also veered off of the road at the curve with the right tires being almost in the grass and the left tires at the fog line. The second vehicle was identified as an older Chevrolet Beretta [("the Beretta")]. After Officer Potts turned his vehicle around, he was able to see the tail lights of the Beretta pull off onto the left side of the road. Upon arriving at the location of the Beretta, Officer Potts noticed that the Buick he had first encountered was parked next to the Beretta.

Upon approaching the vehicles, the driver of the Beretta was still in the car, and another male was standing outside of the Beretta's driver's door speaking to its driver. This male, later identified as [Hull], stated to Officer Potts that he and the driver of the Beretta were going to see a woman who lived nearby and "laughed and indicated that they both hoped to have sex with her." He further indicated that he was showing his friend where she lived. He admitted that the Buick was his car. Officer Potts confirmed that the vehicle is registered to [Hull]. During his conversation with Officer Potts, [Hull] was swaying and appeared unsteady on his feet. He had to lean upon the Beretta for support and admitted to drinking. The keys to the Buick were found in [Hull]'s pocket. Further, Officer Potts recovered an open bottle of rum from the front floor of the Buick. [Hull] indicated that he did not want to take field sobriety tests due to his current injuries, and requested a blood, breath, or urine test.

When [Hull] was returned to the police station after refusing to take a blood test upon request, Officer Potts went to read him the implied consent warnings from the DL-26 form. During that time, [Hull] stated that he had been stopped for five (5) minutes before Officer Potts appeared. Ultimately, [Hull] submitted to a blood test. [Hull] was found to have a blood alcohol [level] of 0.138%. He was also found to

have 39 ng/mL of cocaine and 1085 ng/mL of Benzoylecgonine in his blood.

Trial Court Opinion, 5/13/14, at 2-3 (record citations omitted).

On May 9, 2012, Hull was charged with reckless driving,[3] failing to drive within a single lane, and five counts of DUI. On August 23, 2013, Hull's case proceeded to a non-jury trial after which the trial court found Hull guilty on all counts except reckless driving. Hull waived his right to a pre-sentence report and his case proceeded directly to sentencing. The trial court sentenced Hull to serve four days at the DUI Alternative to Jail Program and six months of probation, in addition to paying all mandatory fines and costs.

On September 23, 2013, Hull filed a timely notice of appeal. On October 23, 2013, the trial court ordered Hull to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On November 19, 2013 and again on January 8, 2014, the trial court granted Hull forty-five day extensions to file his Rule 1925(b) statement. On March 4, 2014, Hull filed his Rule 1925(b) statement.

The Commonwealth argues that Hull did not timely file his Rule 1925(b) statement and has therefore waived the issue that he raises on appeal. **See** Commonwealth's Brief at 10 n.3. We agree that Hull's 1925(b)

---

[3] 75 Pa.C.S.A. § 3736.

statement is untimely. On January 8, 2014, following his second request, the trial court granted Hull a forty-five day extension to file his Rule 1925(b) statement, making it due by February 24, 2014. *See id.* Hull did not file his Rule 1925(b) statement until March 4, 2014. Nevertheless, our Court has held that under these circumstances, the untimely filing of a Rule 1925(b) statement "is per se ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." *Commonwealth v. Burton*, 973 A.2d 428, 432-33 (Pa. Super. 2009) (en banc). Furthermore, "if there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." *Id.* at 433. Here, Hull's counsel filed a Rule 1925(b) statement setting forth the issue Hull seeks to raise on appeal, and the trial court filed an opinion addressing that issue. Accordingly, we will consider the merits of the issue presented on appeal. *See id.*

On appeal, Hull raises the following issue for our review and determination: "Did the [t]rial [c]ourt err as a matter of law in determining that there was sufficient evidence to convict [Hull] of the DUI[-]related offenses?" Hull's Brief at 1. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict

- 4 -

winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013)

(internal quotations and citations omitted).

Hull only challenges the trial court's finding that he drove, operated or

was in actual physical control of the Buick on the night in question.[4] *Id.* at

---

[4] The DUI statute, in pertinent part, provides as follows:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\*    \*    \*

**(b) High rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

\*    \*    \*

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),[1] known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

5. Hull contends that Officer Potts did not see him driving the Buick and that a period of time elapsed from when Officer Potts first saw the Buick to when he came upon it stopped along the side of the road. *Id.* at 6. Thus, Hull avers that Officer Potts lost sight of the Buick long enough for another potential driver to leave the scene. *Id.* Hull does not dispute that he consumed a sufficient amount of alcohol and drugs such that the he was incapable of safely driving, operating or being in actual physical control of the movement of the vehicle. *See id.* at 5-6.

We conclude, after evaluating the evidence in the light most favorable to the Commonwealth as the verdict winner, that the Commonwealth proved beyond a reasonable doubt that Hull was operating the Buick. The certified record on appeal reveals the following. Officer Potts observed two cars, the

---

> (iii) metabolite of a substance under subparagraph (i) or (ii).
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.
>
> (3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1), (b), (d)(1)-(3).

Buick and the Beretta, driving on North Lewis Run Road at a high rate of speed, well above the speed limit, when they both veered slightly off the road on a curve near the Annhurst Apartments. Affidavit of Probable Cause, 5/7/12, at 2. Officer Potts pursued and caught up with the two vehicles, which had on their own already pulled off the road. *Id.* While Officer Potts was questioning Hull, he learned that Hull was the owner of the Buick. After placing Hull under arrest, Officer Potts recovered the keys to the Buick from Hull's pocket. *Id.* Importantly, after Officer Potts placed Hull under arrest, Hull admitted to operating the Buick. *See id.* at 3. While Hull berated Officer Potts for making what Hull described as an illegal arrest, Hull told Officer Potts that the officer was out his jurisdiction when Hull had already stopped and got out of his car. *Id.* at 3. Hull stipulated to these facts as presented in the police report and the affidavit of probable cause. N.T., 10/23/13, at 5-7. Hull did not present any evidence that any other person operated the Buick at the time in question. Therefore, the evidence was more than sufficient to conclude that Hull had operated the Buick. Accordingly, because Hull only challenged the finding that he operated the Buick on the night in question, there was sufficient evidence to sustain Hull's convictions for DUI.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2015